RECEIVED

SEP 15 2010

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

FILED

SEP 15 2010

DAVID CREWS, CLERK
By: X. Houston
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

DOROTHY DAWKINS

Versus

HICKMAN FAMILY CORPORATION and
PERRY HICKMAN

CAUSE NO. 1:09-CV-164-SA-JAD

### SUPPORT FINAL JUDGEMENT TO DISSOLVE THE CORPORATION

I, VIRGINIA HICKMAN, an interested party without counsel, and in Good Faith, am providing documentation to substantiate that authority has been exceeded by The Defendant for self benefit of The Board of Directors Ruby Stennis, Lorine Randle, Lee Morris Hickman and Perry Hickman and to the detriment of 5 shareholders Gillie Murry, Dorothy Dawkins, Callie Drake, Mattie Johnson and Virginia Hickman who want to dissolve The Corporation.

My original $1/12^{th}$ shares, *Exhibit A*, are gradually being reduced, *Exhibit B*. The reasons for reduction are not provided by The Defendant. At the current reduction rate, the shares will be 0% in less than 7 years. I strongly oppose to selling my shares at a diminutive amount of $8,867.11 and oppose the gradual reduction of my $1/12^{th}$ shares in The Corporation. $47,000 is a more accurate sale price to Shareholders wanting to dissolve The Corporation using the appraised value of The Land and 1st and 2nd timber thinning recommended by a forest management company. *Exhibit L2*.

Therefore, I respectfully, ask The Court to Order the dissolution of The Hickman Family Corporation and divide all its assets. The assets include 217.5 acres of land, Refurbished John Deere tractor, antique coins, hundreds of Motown records, WWI gun and etc. This Order will ascertain each of Tommie Lee and Mattie Hickman heirs benefit equally which was the wishes of our parents.

## BACKGROUND

My Father's wish as quoted to me was, "When you retire from your job, you will always have your share of The Land to build a home." I have heard versions of this statement from siblings. The Defendant's claim that My Father wanted to keep The Corporation whole was not part of any conversations between us. Doctors informed him that he would have to go into a nursing home at some point. The fear of the nursing home taking his property upfront for his care caused him much concern. As a Farmer the sale of timber and cattle is how emergency expenses were handled. Perry, Lee Morris and My Father worked with an attorney to avoid his concern of the loss of His Land and began to form a Corporation.

When My Father heard the words Equal Shares, it meant everybody has $1/12^{th}$ of The Land. I was asked by My Father to sign the quitclaim to transfer my $1/12^{th}$ of The Land into The Corporation which was in the process of being formed. I signed believing everyone would honor his wish and I would always have a place to build a home when I retire.

## ARGUMENT

I ask The Court to consider the following detriments by The Defendant against The Shareholders who wish to dissolve The Corporation. Our shares have gone from 8.33% to 7.143%. *Exhibits A and B*. Our interests are disrespected when The Defendant does not respond to our requests. The Defendants actions are to decrease the shares of The Shareholders who want to dissolve The Corporation and increase the shares of The Shareholders (Board Of Directors) who want to retain The Corporation. The Defendant is attempting to force sell of our shares by reducing our share percentage and showing disrespect of our interests. See the following 5 examples below:

1. At The Corporation 08/9/08 annual meeting 900 new shares were made available by The Directors. The new shares were voted for by The 4 Directors and voted against by The 5 Shareholders wanting to dissolve. *Exhibit C4*. I received a letter postmarked 1/12/09 from Lee Morris Hickman dated 1/11/09 informing The Shareholders they can purchase a minimum of 50 shares for $50 each. Lee Morris said to send a check for $2500 by 1/30/09. *Exhibits* D1 -D2.

2. After several years of requests for Corporate information, a report was sent by Perry or Lee Morris Hickman in The Fall of 2007 with Corporate information from 2000 to 2007. The Defendant was re-instating The Corporation, paying taxes, and filing annual reports after years of neglect. The Report showed questionable Loans from Shareholders Totaling $144,736. *Exhibit* E.

I reviewed the report and sent an email to Perry and Lee Hickman with a list of questions and received no response. This email was resent in March, 2008 with no response. *Exhibits F1 -F2.* I have yet to received a response on why these loans were acquired.

3. The Directors neglected to inform The Shareholders that The Corporation was Administratively dissolved for 14 years due to failure to pay corporate taxes and file annual reports. *Exhibit G.*

4. About 5/20/07 The Shareholders received a letter to participate in purchase of 100 shares. *Exhibit H.* Seven shareholders responded with interest to purchase before the deadline of 6/1/07. *Exhibit I.* Within a few days Helen Killins shares were sold to Perry and Lee Morris Hickman as indicated by letters from Helen Killins and Perry Hickman dated 6/18/07. *Exhibits J1-J2.* I called Perry and asked "Why he ignored the other interested shareholders" and he said to speak with Helen. The Shareholders were disregarded in the sale of Helen's 100 shares.

5. Between 5/8/01 and 5/19/01, the majority of shareholders voted to dissolve The Corporation. *Exhibits K1 - K2.* An attorney was contacted for an expense estimate prior to sending out the voting request. Timber proceeds from thinning 63 acres, minus taxes, were in the bank and was to be used to pay for dissolution. *Exhibit K3.* The Defendant received the letter for his vote and sent out an admonishing letter dated 6/4/01. *Exhibits K4 – K7.* On 12/5/01 I received a letter from him dated 11/28/01 notifying shareholders the timber proceeds had been distributed as dividends to The Shareholders. *Exhibits K8 – K12.*

The distribution of the timber proceeds was done without a vote or any prior notification to The Shareholders. This distribution was done to get rid of the money in the bank leaving no money available to dissolve the Corporation per majority voted.

## CONCLUSION

Respectively, I urge The Court to consider the following 4 listed items in the final judgment and keep in mind "The Corporation is the Land", the disrespect shown by The Defendant, and, therefore, rule to dissolve The Corporation.

1. The Corporation was paid $108,633.10 by Tenneco Packing Inc to thin about 63 acres of timber on 2/23/1999. *Exhibit* K3. Future, Corporate Timber proceeds from 1st (2010) and 2nd (2016/2018) thinning of 67 acres of timber is likely over $300,000. A Forest Stewardship Management Plan dated 2/4/08 identified 1st and 2nd thinnings of 67 acres of timber. *Exhibits L2*. All The Shareholders should share in the proceeds from timber up to 2018 and not just The Directors.

2. If necessary, I ask The Court to place The Corporation on the open market to obtain the best fair market value.

3. I ask The Court to view the contents of The Defendant's Motion to Determine Fair Value of Plaintiffs' shares filed 8/24/10. If the appraised value is $262,000, and then it should be used and not reduced by a tax book value of $92,115. The CPA used IRS tax returns and information from non objective Defendant to determine the fair value market which is questionable.

4. I ask The Court to considering dissolving The Corporation into two parts The Shareholders wanting to dissolve and The Shareholders wanting to retain The Corporation. Then, The Defendant can have a smaller version of The Corporation.

Sincerely and Respectfully submitted, this 13th day of September, 2010.

BY: _Virginia Hickman_ Date: 9/13/2010
Virginia Hickman

### CERTIFICATE OF SERVICE

I, VIRGINIA HICKMAN, do hereby certify that I filed with The Court and served upon the following by US mail.

(NONE)

Sincerely and Respectfully submitted, this 13th day of September, 2010.

BY: _Virginia Hickman_ Date: 9/13/2010
Virginia Hickman