**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**DOROTHY DAWKINS**                                                    **PLAINTIFF**

**v.**                                                    **CAUSE NO. 1:09-CV-164**

**HICKMAN FAMILY CORPORATION and**
**PERRY HICKMAN**                                                    **DEFENDANTS**

## <u>MEMORANDUM OPINION</u>

On June 30, 2009, Plaintiff Dorothy Dawkins filed a Verified Complaint for Dissolution and Temporary and Preliminary Injunctive Relief against Hickman Family Corporation and Perry Hickman, in his capacity as Chairman of the Board of Directors and General Manager of the Corporation. Perry Hickman moved to dismiss the Complaint against him in his capacity as Chairman of the Board of Directors and General Manager of the Corporation. This Court granted that Motion on October 1, 2009, leaving only the Hickman Family Corporation as a Defendant. However, even though Perry Hickman was dismissed as a defendant, he remained a party to this action as he filed a Notice of Election to Purchase Shares of Dorothy Dawkins in Lieu of Dissolution pursuant to Mississippi Code Section 79-4-14.34 on July 28, 2009. Subsequently, shareholders Callie Drake, Virginia Hickman, Mattie Johnson, and Gillie Murry sought to intervene in this action as additional Plaintiffs also wishing to dissolve the corporation. As a result, Perry Hickman then filed an Amended Notice of Election to Purchase Shares of all Petitioning Shareholders on August 21, 2009.

On August 24, 2010, Perry Hickman and the Hickman Family Corporation filed a Motion to Determine Fair Value of Plaintiffs' Shares, to Order Sale of Shares, to Stay Proceedings, and for Entry of a Final Judgment. On September 15, 2010, Virginia Hickman filed a Motion for

Summary Judgment, entitled Support Final Judgment to Dissolve the Corporation. Further, on September 27, 2010, Mattie Johnson filed a Response to Motion for Summary Judgment, which was another petition to dissolve the corporation.

On November 10, 2010, this Court issued an Order [62] and Opinion [63] denying Plaintiffs' motions for summary judgment and granting Perry Hickman's motion to stay the proceeding to dissolve the corporation. The Court refrained from addressing Perry Hickman's motion to determine the fair value of Plaintiffs' shares and order the sale of such shares, as the Court allowed the Plaintiffs, who are mostly proceeding pro se, an additional forty-five days to retain a property appraiser and valuation expert, or designate one for the Court to appoint. Specifically, the Court gave the Plaintiffs until December 27, 2010, to provide any evidence they wished the Court to consider in determining the fair value of their shares. The petitioning shareholder Plaintiffs, who include Dorothy Dawkins, Callie Drake, Virginia Hickman, Mattie Johnson, and Gillie Murry, failed to file *anything* with the Court by December 27.  As such, the only evidence provided to the Court regarding the valuation of shares is from Perry Hickman and the Hickman Family Corporation. The Court now determines the fair value of the petitioning shareholders' shares and addresses Virginia Hickman's recent Motion for Court to Consider Changes in Affidavit of James A. Koerber [76].

## ANALYSIS AND DISCUSSION

### *Relevant Statutory Framework of Mississippi Business Corporation Act*

The Mississippi Business Corporation Act ("MBCA"), the relevant statute governing this case, sets out procedures when grounds for judicial dissolution have been alleged. Section 79-4-14.30 of the Mississippi Code states, in relevant part,

> (a) The [ ] court may dissolve a corporation: (2) In a proceeding by a shareholder if it is established that: (ii) the directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent[.]

MISS. CODE ANN. § 79-4-14.30(a)(2)(ii).

After a shareholder has requested judicial dissolution of a corporation, the MBCA offers an option to the corporation or other existing shareholders to purchase shares owned by the petitioning shareholder "in [l]ieu of [d]issolution." MISS. CODE ANN. 79-4-14.34. This election to purchase shares is statutory right under Section 79-4-14.34(a). Most other states also allow the corporation or its shareholder(s) to avoid dissolution by electing to purchase at fair value the shares owned by the petitioning shareholder(s).[1] See, e.g., ALA. CODE § 10-2B-14.34; ALASKA STAT. § 10.06.630; ARIZ. REV. STAT. ANN. § 10-1434; CAL. CORP. CODE § 2000 and Mart v. Severson, 95 Cal. App. 4th 521, 115 Cal. Rptr. 2d 717 (2002) (noting that the corporation or fifty percent shareholder may avoid dissolution of the corporation by purchasing the stock of the shareholders seeking to dissolve the corporation and finding that the intent of this statutory framework allowing the avoidance of dissolution is to preserve the corporate enterprise); CONN. GEN. STAT. §§ 33-871 et seq.; FLA. STAT. § 607.1436; 805 ILL. COMP. STAT. 5/12.55(b) (public corporations); ME. REV. STAT. ANN. TIT. 13-C, § 1434 and Kaplan v. First Harford Corp., 522 F. Supp. 2d 275 (D. Me. 2007) (applying Maine state law and noting that "if the corporation invokes th[e] election provision, the court *must* dismiss the dissolution petition") (emphasis

---

[1] In the Official Comment to Section 14.34 of Model Business Corporation Act, which Mississippi adopted in passing the Mississippi Business Corporation Act, it states: "Commentators have observed that it is rarely necessary to dissolve the corporation and liquidate its assets in order to provide relief: the rights of the petitioning shareholder are fully protected by liquidating only the petitioner's interest and paying the fair value of his or her shares while permitting the remaining shareholders to continue the business. In fact, it appears that most dissolution proceedings result in a buyout of one or another of the disputants' shares either pursuant to a statutory buyout provision or a negotiated settlement . . . Accordingly, section 14.34 affords an orderly procedure by which a dissolution proceeding under section 14.30(a)(2) can be terminated upon payment of the fair value of the petitioner's shares." MODEL BUS. CORP. ACT § 14.34, Official Comment.

added); MD. CODE ANN. CORPS & ASS'NS § 4-603; MICH. COMP. LAWS § 450.1489(1)(e); MINN. STAT. § 302A.751, SUBD 2; MO. REV. STAT. § 351.860; MONT. CODE ANN. §§ 35-1-939(1)(d), 35-9-503; N.H. REV. STAT. ANN. § 293-A:14.34 and <u>Bendetson v. Killarney, Inc</u>., 913 A.2d 756 (N.H. 2006) (right to elect to purchase shares was subject to court's authority to set aside election for equitable reasons); N.J. REV. STAT. § 14A:12-7; N.Y. BUS. CORP. LAW 1118 and <u>In re Kemp & Beatley, Inc</u>., 64 N.Y.2d 63, 484 N.Y.S.2d 799, 473 N.E.2d 1173 (1984) (noting that before any dissolution may be accomplished, the majority shareholders *must be given* the opportunity to elect to purchase the petitioner's shares at fair value) and <u>In re Piekos</u>, 2010 WL 3155942, at *17 (N.Y. Sup. Aug. 3, 2010) (finding that the corporation and others shareholders have the "absolute right" to "avoid the expense and risk of dissolution proceedings by simply offering to buy out the minority interest; the minority is protected by a court-approved determination of fair value and other terms of the purchase"); N.C. GEN. STAT. ANN. § 55-14-31(d); <u>Foster v. Foster Farms, Inc</u>., 112 N.C. App. 625, 436 S.E.2d 843 (1993); N.D. CENT. CODE § 10-19.1-115(3); R.I. GEN. LAWS § 7-1.1-90.1 and <u>DiLuglio v. Providence Auto Body Shop, Inc.</u>, 755 A.2d 757, 777-78 (R.I. 2000) (finding that the Rhode Island Business Corporation Act provides "one or more shareholders with an *absolute right* to file an election to purchase with the court before the dissolution hearing commences") (emphasis added); S.C. CODE ANN. § 33-14-310(D)(4); UTAH CODE ANN. § 16-10A-1434; VT. STAT. ANN. TIT. 11A § 20.15(B); W. VA. CODE § 31D-14-1434; WIS. STAT. § 180.1833(2)(A)(9); WYO. STAT. ANN. § 17-17-142.

If a shareholder files such an election to purchase shares, the corporation must, within ten days thereafter, give written notice to all other shareholders, advising the recipients of their right to join in the election to purchase. MISS. CODE ANN. 79-4-14.34(b). After such an election has been filed, the original proceeding to dissolve the corporation *may not be discontinued or settled*,

and the petitioning shareholders *may not sell or otherwise dispose* of their shares. MISS. CODE ANN. 79-4-14.34(b). In this case, Perry Hickman filed an election to purchase shares in lieu of dissolution on July 28, 2009.

If the petitioning shareholders who wish to dissolve the corporation and the other shareholders who wish to purchase the shares cannot reach an agreement as to the fair value of the shares to be purchased, the court, upon application by any party, *shall stay* the proceeding to dissolve the corporation. MISS. CODE ANN. 79-4-14.34(d). The court shall then make a determination as to the fair value of the petitioner's shares as of the day before the date on which the petition to dissolve the corporation was filed or as of such other date as the court deems appropriate. MISS. CODE ANN. 79-4-14.34(d). In the present case, Perry Hickman filed a motion to stay proceedings and a motion for the court to determine the fair value of the petitioners' shares on August 24, 2010. This Court granted Perry Hickman's motion to stay the proceedings on November 10, 2010.

Since the parties are unable to reach an agreement in this case, it is this Court's duty to determine the fair value of the shares. MISS. CODE ANN. 79-4-14.34(d). Upon determining the fair value, the court shall enter an order directing the purchase upon such terms and conditions as the court deems appropriate, which may include payment of the purchase price in installments, where necessary in the interests of equity, provision for security to assure payment of the purchase price and any additional costs, fees and expenses as may have been awarded, and, if the shares are to be purchased by shareholders, the allocation of shares among them. MISS. CODE ANN. 79-4-14.34(e).

Upon the entry of this order, the court shall then dismiss the petition(s) to dissolve the corporation, and the petitioning shareholder(s) shall no longer have any rights or status as a

shareholder of the corporation, except the right to receive the amounts awarded to him or her by the court order, which is enforceable in the same manner as any other court judgment. MISS. CODE ANN. 79-4-14.34(f). The purchase ordered by the Court under Section 79-4-14.34(e) *shall* be made within ten (10) days after the date the order becomes final. MISS. CODE ANN. 79-4-14.34(g).

*Fair Value of Plaintiffs' Shares*

    In Mississippi, and for purposes of this valuation, "fair value" is defined as: "The value of the corporation's shares determined: (i) Immediately before the effectuation of the corporate action to which the shareholder objects; (ii) Using customary and current valuation concepts and techniques generally employed for similar businesses in the context of the transaction requiring appraisal; and (iii) Without discounting for lack of marketability or minority status except, if appropriate, for amendments to the articles pursuant to Section 79-4-13.02(a)(5)." MISS. CODE ANN. § 79-4-13.01(4). The fair value of a shareholder's interest is a question of fact that requires a court to conduct a discriminating consideration of all relevant evidence. See, e.g., Richton Bank & Trust Co. v. Bowen, 798 So. 2d 1268, 1272-73 (Miss. 2001); Matter of Seagroatt Floral Co., Inc., 78 N.Y.2d 439, 576 N.Y.S.2d 831, 583 N.E.2d 287 (1991). As noted by the Mississippi Supreme Court, since "fair value [i]s purely factual," it is "peculiarly within the province of the chancellor, as the trier of facts, to evaluate the evidence, resolve conflicts and to draw reasonable inferences from it." Cal-Maine Foods, Inc. v. Duvic, 264 So.2d 383, 384 (Miss. 1972).[2] The Mississippi Supreme Court has further noted that it "will not disturb the chancellor's findings of fact unless there is manifest error." Bowen, 708 So. 2d at 1273 (citing Thomas Truck Lease, Inc. v. Lee Cnty ex rel. Mitchell, 768 So. 2d 870 (Miss. 1999)). Valuation of shares in a close

---

[2] One trial court judge, Judge Warshawsky, described the court's role in determining fair value as that of a "soothsayer." See Murphy v. United States Dredging Corp., No. 2640-06, 2008 WL 2401230, at *12 (Sup. Ct. Nassau Co. May 19, 2008).

corporation – like the Hickman Family Corporation – is especially fact-dependent upon the circumstances of each case. See Duvic, 264 So. 2d at 385; Brown v. Allied Corrugated Box Co., Inc., 91 Cal. App. 3d 477, 489, 154 Cal. Rptr. 170 (1979) ("Appreciably more detailed instructions governing the appraisal process would, of course, have been quite impracticable since the valuation of stock, especially that of a closely-held corporation, requires a factual determination which must take into account numerous factors and contingencies."). This is primarily because shares of a close corporation are not publically traded; thus, a court cannot simply make its valuation determination based on the "market value" of the shares. Due to this, courts uniformly recognize that there is no single, inflexible formula that must be mechanically applied; rather, the determination of fair value in a close corporation must be tailored to the particular case. See generally, e.g., Hernando Bank v. Huff, 609 F. Supp. 1124 (N.D. Miss. 1985), aff'd, 796 F.2d 803 (5th Cir. 1986); Swope v. Siegel-Robert, Inc., 243 F.3d 486 (8th Cir. 2001); Matter of Prince, 85 F.3d 314 (7th Cir. 1996).

The Plaintiffs in this case presented no evidence to the Court regarding the fair value of their shares, other than arbitrary numbers without explanation or evidentiary support. Therefore, as noted above, the Court gave the Plaintiffs forty-five (45) additional days to offer any supplementary evidence and/or to obtain a valuation expert or provide a designation of proposed valuators to the Court. Not a single Plaintiff responded. Perry Hickman and the Hickman Family Corporation, however, retained and paid for a disinterested, third-party property appraiser and business valuation expert, James Koerber, to determine the fair value of the corporation, and they have provided the Court with Koerber's report and affidavit. Koerber conducted a highly thorough review of the corporation's business and financial records and produced an extensive report to the Court, finding that the value of a one-hundred percent (100%) equity interest in the

Hickman Family Corporation was $225,000 as of June 30, 2009. The Court accepts this valuation.[3]

Koerber began his valuation report with a description of the Hickman Family Corporation, noting that due to the nature of this corporation – as it is a farm – its value lies in its assets. He further noted that, under the Internal Revenue Service Ruling 59-60 – important in the valuation of closely-held corporations – he took into account the following factors in the valuation analysis: (1) the nature of the business and the history of the enterprise, (2) the economic outlook in general and the condition and outlook of the specific industry in particular, (3) the financial condition of the entity, (4) the earnings capacity of the entity, (5) the dividend paying capacity of the entity, (6) the nature of the tangible and intangible assets of the entity, (7) the sale of any stock and the size of the block of stock being valued, and (8) the market prices of actively traded stocks of other corporations in similar business.

Koerber next provided a detailed description of business valuation methodology, explaining that business valuation methodology is generally categorized into three broad approaches: (1) income-based approach, (2) market-based approach; (3) asset-based approach. See also Dunn v. C.I.R., 301 F.3d 339, 350 (5th Cir. 2002) (noting that "appraising corporations or blocks of corporate stock involves consideration of three approaches: income, market, and asset-based"); Sys. Components Corp. v. Florida Dept. of Transp., 14 So. 2d 967, 980 (Fla. 2009) (noting the appropriate valuation methods: income-based approach (i.e., value based on current and future revenue stream discounted to a total present value), market-based approach

---

[3] The Court notes that it is accepting Koerber's *revised* valuation report [68]. Koerber's first report had relied upon a land appraisal performed by Greg Sirmon. Sirmon applied what was essentially a "minority discount." As Defendants concede, minority discounts are not allowed to be included in determining the fair value of a corporation under Mississippi law. See MISS. CODE ANN. § 70-4-13.01(4). After noticing this discount, Koerber promptly revised his report.

(i.e., value based on comparison to comparable businesses existing in the particular market adjusted for the individual characteristics and risks associated with the specific business), [and] asset-based approach (i.e., value based on total assets net liabilities; typically used when the business is not profitable)"); Horn v. McQueen, 353 F. Supp. 2d 785, 808 (W.D. Ky. 2004) (same). Koerber went through the three valuation methods, and concluded that the Net Asset Value Method was the most relevant and deserved the highest consideration.

Koerber started with an analysis of the income-based approach. He noted that this approach "consider[s] the company being valued more or less though it were an investment mechanism, whose purpose is to produce a monetary return for its owner(s)." In other words, this income approach determines the value of a business based on its ability to generate a desired economic benefit for the owners. See Horn, 353 F. Supp. 2d at 808 ("The income approach determines value by estimating the future economic benefits accruing to the business owner, and discounting those benefits back to an equivalent present value by using a discount rate which factors in both the time value of money and the riskiness of the business."). Since Koerber classified the Hickman Family Corporation as an asset-holding company, as the Corporation owns real estate in Winston County, Mississippi, Koerber reasoned that the real value of the Corporation lies in the value of its assets, and "[t]herefore, determining a meaningful value for the Company using the income-based approach was not applicable." The Court finds Koerber's reasoning to be logical. The Hickman Family Corporation is not an income-producing venture; that is, it is not a company generating regular income or profit. Rather, it is more akin to a real estate holding company. Thus, the Court agrees with Koerber finding that that the most relevant methodology is not the income-based approach. See Rev. Rul. 59-60, sec. 5, 1959-1 C.B. 237, 242-243 ("The values of the stock of a closely held investment or real estate holding company *

* * is closely related to the value of the assets underlying the stock. For companies of this type the appraiser should determine the fair market values of the assets of the company.").

Koerber next went on to discuss the market-based approach, noting that "[t]his method represents a market-oriented approach to estimating value." The market-based approach to valuation establishes business value by a comparison of historic sales involving similar businesses. Koerber found that "[a]s formerly mentioned, Hickman Family Farm Corporation, Inc., currently holds real estate and is not comparable to market data available; therefore, determining a meaningful value for the Company using the market-based approach was not possible." The Court agrees. Market value is not used, or at least is rarely used, in determining fair value in a close corporation because close corporation stocks are, by definition, not traded on the public market. See Blake v. Blake Agency, 107 A.D.2d 139, 146, 486 N.Y.S.2d 341 (2d Dep't 1985). As the Fifth Circuit noted in Dunn v. C.I.R., 301 F.3d 339, 350 (5th Cir. 2002), "[w]hen, as here, the corporation being appraised is closely held, is not regularly traded on an exchange, has not been traded at arm's length in close proximity of the valuation date, and is not comparable to other corporations engaged in the same or similar business of which there is evidence of recent sales of stock, the market approach is inapposite . . . ."

After an analysis of the income-based and market-based valuation methodologies, Koerber determined that an asset-based approach is the most relevant. The Court finds that Koerber's findings under the asset-based approach are appropriate. See Route 188, LLC v. Middlebury, 93 Conn. App. 120, 124 887 A.2d 958 (Conn. App. 2006) ("the [court] may select the [valuation method] most appropriate in the case before [it]."). The asset-based approach seeks to determine the business value based on the value of its assets, less its liabilities. As Koerber noted, the net asset value methods "are appropriate only in limited circumstances."

However, Revenue Ruling 59-60, section 5 discusses these limited circumstances stating that, "adjusted net worth should be accorded greater weight in valuing the stock of a closely held investment or real estate holding company, whether or not family owned, than any of the other customary yardsticks of appraisal, such as earnings and dividend paying capacity." Thus, the Court accepts Koerber's valuation methodology.

The petitioning shareholders never appear to dispute Koerber's conclusion that the asset-based valuation methodology is the one most applicable in this instance. In fact, by not challenging such, they appear to concede that this asset-based methodology is correct. However, the petitioning shareholders do make two separate arguments concerning Koerber's report. In Virginia Hickman's Motion for Court to Consider Changaes [76] she alleges (1) that Koerber erred when he calculated the value of a 100% stake in the corporation, rather than the 35.7% stake owned by the petitioning shareholders, and (2) that Koerber erred when he adjusted the value of the corporation based on its potential tax liability. The Court discusses each of these arguments in turn.

First, petitioning shareholder Virginia Hickman makes an argument concerning the fact that Koerber valued the corporation at 100% interest. Hickman asserts that this was error since only 35.7% of the shares (i.e., the combined number of shares owned by the petitioning shareholders) are changing hands, instead of 100%. Hickman appears to misunderstand Koerber's valuation methodology. The number of shares actually changing hands has little to do with the value of the actual corporation. Calculating the whole in order to see how much each smaller part is worth is a very basic concept. The value of 35.7% stake in the corporation can be determined simply by multiplying .357 times the value of a 100% stake in the corporation. Thus, the Court finds that Koerber did not err in calculating 100% interest in the corporation.

Petitioning shareholder Hickman also contends that Koerber erred when he took into account the corporation's future tax liabilities. The Court disagrees and finds that such an adjustment must be taken into account in order to determine the actual fair value of the shares in this case. The Hickman Family Corporation – which is a farm – is akin to an asset-holding corporation. Its worth is in its property; that is, a buyer would only have interest in the corporation for such property. Tommie Lee Hickman purchased the farm in the 1940s, and its tax basis now is $19,375.00. The corporation cannot realize the fair market value of the assets without incurring this tax liability. A simplified example is that if a piece of property was alleged to be worth 100 dollars, but when sold it would incur a tax liability of 25 dollars, the property would really only be worth 75 dollars. As the Defendants aptly noted, "Either the Corporation would sell the property to the buyer and incur the tax liability before dispersing the proceeds to the shareholders, or the buyer would buy the corporation, but pay a reduced price because he'd later have to incur the tax liability to sell the property." Thus, from even just a fairness standpoint, it only makes sense to include the built in gain tax liability when valuing the corporation *based on its assets*. Further, in circumstances such as this, courts – including the Fifth Circuit – have approved the inclusion of built in gains tax liability in an asset-based valuation. <u>See</u>, <u>e.g.</u>, <u>Dunn</u>, 301 F.3d at 351 ("We hold as a matter of law that the built-in gains tax liability . . . must be considered as a dollar-for-dollar reduction when calculating the *asset*-based value of the Corporation, just as, conversely, built-in gains tax liability would have no place in the calculation of the Corporation's *earnings*-based value.") (emphasis in original). As such, the Court finds that Koerber did not err in adjusting the value of the corporation based on its potential tax liabilities.

Next, the Defendants contend that the petitioning shareholders should bear the pro rata share of Defendants' attorney fees, appraisal costs, and other expenses. Defendants' argument for such a contention is as follows:

> MISS. CODE ANN. § 79-4-13.31(a) and (b)(2) allow for an award of costs and expenses when determining the fair value of a corporation pursuant to MISS. CODE ANN. § 79-4-13.30. The Official Comment to the Model Business Corporations Act, which was adopted by Mississippi in passing the Business Corporations Act, provides: "Section 14.34 does not specify the components of "fair value," and the court may find it useful to consider valuation methods that would be relevant to a judicial appraisal of shares under section 13.30." *See* Section 14.30 of the Model Business Corporation Act, Official Comment, attached to this memorandum as Exhibit 1.

> Further, MISS. CODE ANN. § 79-4-14.34(d) allows the Court, when "appropriate under the circumstances," to determine the value of the shares on some date other than the day before the petition to dissolve the corporation was filed. These costs are additional liabilities for the Corporation, and would affect the value of everyone's shares on a pro rata basis equivalent to an award of costs and expenses under § 79-4-13.31 were the Corporation's value determined as of the date of Judgment.

In considering this argument, the Court begins with Mississippi Code Annotated Section 79-4-14.34, the relevant Section governing this case. This Section is entirely void of a reference to assessing costs *to the petitioning shareholders*. Section 79-4-14.34(e), however, does indeed discuss allowing interest and awarding fees and expenses. First, subsection (e) states, "Interest may be allowed at the rate and from the date determined by the court to be equitable, but if the court finds that the refusal of the petitioning shareholder to accept an offer of payment was arbitrary or otherwise not in good faith, no interest shall be allowed." MISS. CODE ANN. § 79-4-14.34(e). The Code says nothing about assessing costs if the petitioning shareholders act arbitrarily or in bad faith. Further, the Code goes on to say, "If the court finds that the petitioning shareholders had probable grounds for relief under paragraph (ii) or (iv) of section 14.30(2), it may award to the petitioning shareholder reasonable fees and expenses of counsel

and of any experts employed by him." Id.  Again, that Section is devoid of any indication that costs should be assessed to the petitioning shareholders.

The Defendants assert that the Court should instead be guided be Mississippi Code Annotated Section 79-4-13.31.  That Section reads, in relevant part, as follows:

> (a) The court in an appraisal proceeding commenced under Section 79-4-13.30 shall determine all court costs of the proceeding, including the reasonable compensation and expenses of appraisers appointed by the court. The court shall assess the court costs against the corporation, except that the court may assess court costs against all or some of the shareholders demanding appraisal, in amounts which the court finds equitable, to the extent the court finds such shareholders acted arbitrarily, vexatiously or not in good faith with respect to the rights provided by this article.

> (b) The court in an appraisal proceeding may also assess the expenses of the respective parties in amounts the court finds equitable:

>> (1) Against the corporation and in favor of any or all shareholders demanding appraisal if the court finds the corporation did not substantially comply with the requirements of Section 79-4-13.20, 79-4-13.22, 79-4-13.24 or 79-4-13.25; or

>> (2) Against either the corporation or a shareholder demanding appraisal, in favor of any other party, if the court finds that the party against whom the expenses are assessed acted arbitrarily, vexatiously or not in good faith with respect to the rights provided by this article.

MISS. CODE ANN. § 79-4-13.31(a), (b)(2).  The Defendants recognize that this Section concerns appraisal proceedings under Article 13, and not judicial dissolution under Article 14.  However, Defendants contend that the Official Comment to the Model Business Corporations Act provides: "Section 14.34 does not specify the components of 'fair value,' and the court may find it useful to consider *valuation methods* that would be relevant to a judicial appraisal of shares under section 13.30." See MODEL BUS. CORP. ACT § 14.34, Official Comment (emphasis added). This comment first refers to "valuation methods" – it does not refer to assessing costs, fees, and other expenses after the various valuation methods have been examined. Second, as noted above,

Section 14.34(e) actually discusses the awarding of fees and expenses, and it never refers to assessing expenses against the petitioning shareholders. Third, even if the Court referred to Mississippi Code Section 79-4-13.31(a) and (b)(2), it would still not assess attorney fees and other costs to the petitioning shareholders in this particular case. Under subsection (a), it explicitly notes that in an appraisal proceeding, the court "shall" assess court costs against the corporation. MISS. CODE ANN. § 79-4-13.31(a). Thus, the general rule – as noted by the mandatory language contained in that subsection – is to assess costs against the corporation, not the shareholders. The only time the Code deviates from this mandatory language is when the Court finds that all or some of the shareholders demanding appraisal acted arbitrarily, vexatiously, or not in good faith. MISS. CODE ANN. § 79-4-13.31(a), (b)(2). Here, almost all of the petitioning shareholders are proceeding pro se. While they may have acted without knowledge of the law, the Model Business Code is complex, and the Court is unable to say that the petitioning shareholders in fact acted vexatiously or with any type of improperly-motivated intent.[4] Accordingly, the Court rejects Defendants' arguments and declines to assess costs to the petitioning shareholders in this case.

---

[4] Defendants also assert that the Court should determine the value of the petitioners' shares as of the date of this Order so as to take into consideration the liabilities incurred due to this lawsuit. Mississippi Code Annotated Section 79-4-14.34(d) states, "the court . . . shall . . . determine the fair value of the petitioner's shares as of the day before the date on which the petition under Section 79-4-14.30(2) was filed or as of such other date as the court deems appropriate under the circumstances." In this case, the Court finds that setting the date of valuation as of the date of this Order would not be appropriate for several reasons. First, the Defendants reasoning appears to be based upon their allegation that the shareholders filed a "vexatious lawsuit." The Court has already concluded that while the pro se shareholders have acted without knowledge of the law, there is no evidence they in fact acted with bad faith. Second, the general rule is for the Court to determine the value of the shares as of the day before the date in which petition to dissolve was filed. Third, the fair value of the shares was in fact determined on the date in which the petition was filed. That is, Koerber's report determined the fair value of shares as of June 2009. While setting the date of valuation as of the date of this Order would take into account the liability incurred by the corporation due to this lawsuit, the Court currently has no way to know what the

Once the Court determines the fair value of the shares, the Mississippi Business Corporations Act directs that the Court shall do as follows:

> [T]he court shall enter an order directing the purchase upon such terms and conditions as the court deems appropriate, which may include payment of the purchase price in installments, where necessary in the interests of equity, provision for security to assure payment of the purchase price and any additional costs, fees and expenses as may have been awarded, and, if the shares are to be purchased by shareholders, the allocation of shares among them. In allocating petitioner's shares among holders of different classes of shares, the court should attempt to preserve the existing distribution of voting rights among holders of different classes insofar as practicable and may direct that holders of a specific class or classes shall not participate in the purchase.

MISS. CODE ANN. § 79-4-14.34(e). Since the Court has accepted Koerber's revised valuation, the Court finds that, as of June 30, 2009, the fair value of a 100% equity interest in the Hickman Family Corporation is $225,000. The petitioning shareholders each own 7.143% of the corporation's equity. As such, the fair value of the shares is $16,071.75.

Next, it is the Court's duty to set the terms and conditions of the purchase of shares. The Official Comment to the Model Business Code provides directives for the Court in determining the terms and conditions of the sale. As relevant to this case, the Official Comment states,

> It is expected that an order pursuant to subsection (e) will ordinarily provide for payment in case, subject, in the case of any payment by the corporation, to the provisions of section 6.40. However, mindful that case settlement may sometimes impose hardship n the purchasers, subsection (e) recognizes the court's discretion to provide for payment of the purchase price in installments, but only "where necessary in the interests of equity." In determining whether installment payments are "necessary in the interests of equity," the court should weigh any possible hardship to the purchaser against the petitioner's interest in receiving full and prompt payment of the value of his shares. Accordingly, before ordering payment in installments, the court should be satisfied with the purchaser's ability to meet

---

actual fair value of the shares are as of the date of this Order. In other words, in order to know the 100% equity interest in the corporation as of the date of this Order, a new valuation would need to be done; that is, a valuation demonstrating the fair value as of the date of this Order as opposed to June 30, 2009. Thus, the Court sees no reason to determine the value of the corporation on any other date than June 30, 2009.

the scheduled payments and to provide such security as the court deems necessary.

Otherwise, the contents of the order under subsection (e) are entirely subject to the court's discretion.

<u>See</u> MODEL BUS. CORP. ACT § 14.34, Official Comment.  In this case, Perry Hickman and Lee Hickman have elected to purchase the shares of Dorothy Dawkins, Callie Drake, Virginia Hickman, Mattie Johnson, and Gillie Murry.  Neither Perry Hickman nor Lee Hickman has ever mentioned a desire to provide payment of the purchase price in installments or any hardship that might occur as a result of payment not in an installment. Thus, the Court finds that there is no evidence in the record that would make it "necessary in the interest of equity" to allow for payment in installments.

Perry Hickman and Lee Hickman both currently own 20.833% in the Hickman Family Corporation.  Under Mississippi Code Annotated Section 79-4-14.34(e), the Court orders that, upon payment, each of the petitioning shareholders' shares be transferred to these two purchasers.  Further, in accordance with the Mississippi Business Corporations Act, the Court dismisses the original petition to dissolve the corporation under Section 79-4-14.30, and the petitioning shareholders shall no longer have any rights or status as a shareholder in the Hickman Family Corporation, except the right to receive the amounts awarded to them by the Order of the Court. <u>See</u> MISS. CODE ANN. § 79-4-14.34(f).[5]  This purchase, which the Court has ordered pursuant to Mississippi Code Annotated Section 79-4-14.34(e), "shall be made within ten (10)

---

[5] Mississippi Code Annotated Section 79-4-14.35(f) provides as follows:

Upon entry of an order under subsection (c) or (e), the court shall dismiss the petition to dissolve the corporation under Section 79-4-14.30, and the petitioning shareholder shall no longer have any rights or status as a shareholder of the corporation, except the right to receive the amounts awarded to him by the order of the court which shall be enforceable in the same manner as any other judgment.

days after the date the order becomes final unless before that time the corporation files with the court a notice of its intention to adopt articles of dissolution." See MISS. CODE ANN. § 79-4-14.34(g). Accordingly, the purchase of shares in this case shall be made within ten (10) days of the date of this Order – that is, by June 23, 2011.

## CONCLUSION

Based on the foregoing, the Court denies Virginia Hickman's Motion to Consider Changes [76], and determines that the fair value of each petitioning shareholder's shares is $16,071.75. The Court orders that Plaintiffs' Verified Complaint for Dissolution [1] shall be dismissed, that the petitioning shareholders' rights as shareholders in the Hickman Family Corporation shall be extinguished, and the purchase of the petitioning shareholders' shares shall be made within ten (10) days from the date of this Order.

So ordered on this, the __13th__ day of ____June_____, 2011.

/s/  Sharion Aycock_____
UNITED STATES DISTRICT JUDGE